**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| DEALER TIRE, LLC, | |
| Plaintiff, | Civil Action No. |
| v. | TRIAL BY JURY DEMANDED |
| DEALERLOGIX LLC f/k/a FLAT HAT SYSTEMS L.L.C. and MARK BRANDON, | |
| Defendants. | |

**COMPLAINT**

Plaintiff, Dealer Tire, LLC ("Dealer Tire" or "Plaintiff"), brings this civil action against Defendants, Dealerlogix LLC (f/k/a Flat Hat Systems L.L.C.) ("Dealerlogix") and Mark Brandon (collectively, "Defendants"), for breach of contract, misrepresentation, misappropriation of trade secrets, tortious interference with contractual relations, unjust enrichment and conversion under Ohio law.  For its complaint against Defendants, Dealer Tire alleges as follows:

**NATURE OF THE ACTION**

1.      Dealer Tire brings this action seeking injunctive and monetary relief for injury and damages caused by Defendants.  As set forth below, Dealerlogix and its founder and President, Mark Brandon, have misappropriated the confidential, proprietary and trade secret information of Dealer Tire and used it, *inter alia*, in a patent application first filed by Mr. Brandon in February 2013, ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ These actions constitute breach of contract, misrepresentation, misappropriation of trade secrets, tortious interference with contractual relations, unjust enrichment and conversion under Ohio law.

**THE PARTIES**

2.     Dealer Tire is a Delaware limited liability company with its principal place of business at 3711 Chester Ave, Cleveland, OH 44114.

3.     On information and belief, Defendant Dealerlogix is a Colorado limited liability company having its principal place of business at 9077 S. White Pelican Way, Littleton, Colorado 80126.

4.     On information and belief, Defendant Mark Brandon is an individual residing at 12520 W. Crestline Drive, Littleton, CO 80127.

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that this is an action arising between residents of different states and the amount in controversy exceeds $75,000.

6.     This Court has personal jurisdiction over Dealerlogix because Dealerlogix expressly consented to the jurisdiction of any federal or state court in the State of Ohio, including this Court, in one of the parties' agreements and the acts complained of in this Complaint were committed by Dealerlogix against, and the resulting injury felt by, Dealer Tire in, *inter alia*, Ohio.

2

7.     This Court has personal jurisdiction over Mark Brandon because the acts complained of in this Complaint were committed by Mr. Brandon against, and the resulting injury felt by, Dealer Tire in, *inter alia*, Ohio.  In particular, Mr. Brandon signed both agreements at issue in this matter as President of Dealerlogix, was the principal contact for Dealerlogix with Dealer Tire and the principal actor in the events recited below.  On information and belief, as to the claims directed to Mr. Brandon, unless otherwise stated, he was acting in his individual capacity, for his own benefit.

8.     Venue as to Dealerlogix is proper in this District pursuant to 28 U.S.C. § 1391 because Dealerlogix consented to jurisdiction in any court in the State of Ohio, particularly in Cuyahoga County, Ohio, and, as to both Defendants, because, among other things, Dealer Tire is a resident of this District and thus a substantial part of the events giving rise to the claims at issue occurred in this District and/or caused injury to Dealer Tire in this district.

## STATEMENT OF FACTS

9.     For many years and at all times relevant hereto, Dealer Tire has been engaged in the business of providing wholesale automotive parts, including tires, wheels, shocks, struts and valve stems, to end-seller automobile dealers, and related services.  In connection with these activities, Dealer Tire has developed a number of proprietary software tools, some used only internally and others made available to other users outside the company.

10.     In ███████, Dealer Tire opened access to its proprietary software tool, the Dynamic Retail Selling Guide ("DRSG") to automobile dealers.  DRSG provides dealers access to Dealer Tire's technology and programs for the distribution of products

and services, which programs have been endorsed by certain original equipment manufacturers of automobiles and light trucks.  Among other things, DRSG is a quoting and selling tool that allows dealers to maintain their tire inventory and prices, as well as the availability of certain tires within the Dealer Tire network that can be sold by the dealership.  DRSG focuses on tires but is also used for other maintenance and light repair parts.

11.     In ███████████, Dealer Tire has invested millions of dollars in technology to better serve its customers and business partners, including OEMs and dealerships.  These investments have led to the development of sophisticated logistics and IT systems to support the sales, merchandising, training, pricing, forecasting, ordering, inventory management and distribution functions across our various programs and OEM alliances.  DRSG is a critical component of this technology infrastructure.

12.     In ██████, Dealer Tire decided to link Dealer Tire's DRSG to other tools already in commercial use, such as scheduling tools and walk around inspection tools.  Accordingly, in preparation for this, during this time Dealer Tire began to develop an application interface that, in conjunction with the DRSG, could then be customized to work with any tool, including scheduling, marketing and inspection tools, and began to investigate possible partners for this project.  Dealer Tire refers to the combined DRSG and the application interface as "eServices."

### DEALER TIRE BEGINS TO WORK WITH DEFENDANTS

13.     In ████, discussions began between Dealer Tire and Defendants about the possibility of integrating Dealer Tire's eServices system with Defendants' DEALER LOGIX walk around inspection tool.  In furtherance of these discussions, on ██████████

███, the parties entered into a Non-Disclosure Agreement ("NDA") between Dealer Tire and Dealerlogix, then known as Flat Hat Systems, LLC, signed by Mr. Brandon on behalf of Dealerlogix.  (NDA attached hereto as Exhibit A.)  On information and belief, Flat Hat Systems, LLC changed its name to Dealerlogix LLC (one of the Defendants here) on January 12, 2015.

14.     In the NDA, the parties agreed, *inter alia*, that they would share certain confidential, proprietary and trade secret information with each other "██████████ ██████████████████████████████████████████████ (the 'Permitted Use')." (Exh. A, Recitals A.)

15.     The parties further agreed in the NDA that any "████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████" the NDA.  (Exh. A at Sec. 3(a).) "██████████████" are defined in the NDA as "██████████████████████ ████████████████" (*Id.*)

16.     In the NDA, any "████████████████████████████ ██████████████████████████████████████████" the NDA and the Disclosing Party would be entitled to, among other things, ████████████ ██████████████████████████████████. (*Id.* at Sec. 9)  The NDA also provides that ██████████████████████████████████████████ ██████████████████████████████████████. (*Id.* at 13.)

17.     The NDA also provides that the agreement is ████████████████████ ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████. (*Id.* at 16.)

18.     Upon entering into the NDA, the parties began to share Confidential Information, as that is defined in the NDA, about their respective systems.  For example, Dealer Tire shared information about the architecture of its system, especially the Dealer Tire application interface, in order to enable Dealerlogix to integrate its tool with Dealer Tire's eServices system for quoting and selling parts and services.  Within the Confidential Information that was shared by Dealer Tire was information about how the Dealer Tire application interface and DRSG worked that was neither public nor could be extrapolated from publicly available information.

19.     After it was determined that the Dealerlogix tool could be adapted to work with eServices, the parties agreed to enter into a further agreement to work together to integrate their systems and provide the collective systems to customers.

20.     Accordingly, on ███████████, Dealer Tire entered into an Application Provider Agreement ("APA") with Dealer Technology Group, LLC ("Dealer Technology"), signed by Mr. Brandon on behalf of Dealer Technology.  (APA attached hereto as Exhibit B.)  On information and belief, Dealer Technology is another entity founded and led by Mr. Brandon, and was merged into Dealerlogix (then known as Flat Hat Systems LLC) effective January 1, 2015.

21.     The APA specifically incorporated all terms and provisions of the NDA and applied them to Dealer Technology.  (*Id.* at Section III.1.)

22.     In the APA, DRSG is defined as the "System" (referred to herein as "System (DRSG)" or "DRSG") and the application interface developed by Dealer Tire,

described above, is defined as the "Dealer Tire API." Defendants' Dealer Logix product

is defined as the "Application." Finally, "███████████████████████████

███████████████████████████████." " (*Id.* at p. 1.)

      23.    In the APA, the parties clearly agreed that ███████████████



██████████. (*Id.* at Sec. I.E.2,

I.E.3. & IV.G) Specifically, the APA provides that:

(*Id.* emphasis added.) Thus, under the APA, Dealerlogix expressly granted to Dealer Tire

any rights – including intellectual property rights – Dealerlogix might have had in the

System (DRSG), the Dealer Tire API or the Interface Results.  Importantly, this grant of rights specifically extends to Dealerlogix's employees or contractors, which includes Mr. Brandon:  "█████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████." (*Id.* at Sec. IV.G.)

24.     In addition, under the NDA, Dealerlogix was ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. (*Id.* at Sec. I.E.1.)  Dealerlogix also undertook certain additional duties including that it "███████████████████████ ████████████████████████████████████████████████████ ████████████" (*Id.* at Sec. I.E.2.)

25.     Further, in the APA, Dealerlogix represented and warranted that it had "████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████." (*Id.* at Sec. I.D.)  Dealer Tire relied on these representations and warranties in entering into the APA.

### DEFENDANTS' MISUSE OF DEALER TIRE'S CONFIDENTIAL INFORMATION AND BREACH OF DUTY TO ASSIGN IP RIGHTS

26.     On February 13, 2013, ███████████████████████████████ █████████████████████████████, Mr. Brandon filed a provisional patent application entitled Systems and Methods for Quoting Vehicle Part Repairs Associated with Vehicle Inspections (the "Provisional Application," No. 61/764,455).

The Provisional Application included a description of a software system that includes a walk around inspection tool linked to a quoting system that can look up various needed car parts and provide both available replacement parts and a price quote.  The Provisional Application focused solely on tires as the example part. The Provisional Application also includes as illustrations of this system a copy of the screen shot from Dealer Tire's proprietary DRSG.  Dealer Tire was unaware of the Provisional Application, including the use of this screen shot, at the time it was filed and never gave permission for the screen shot, or any of Dealer Tire's Confidential Information, to be used in the Provisional Application.

27.     On February 14, 2014, Mr. Brandon filed a non-provisional patent application directed to the same subject matter as the provisional patent application (the "Application," No. 14/177,798).   The Application contains essentially the same information as the Provisional Application, including the use of tires as the sole example part, as well as the DRSG screen shot, and adds claims.  Again Dealer Tire was unaware of the Application at the time it was filed, and never gave permission for use of or copying the screen shot, or any of Dealer Tire's Confidential Information, to be used in the Application.

28.     On or about August 14, 2014, the Application was published.  Based on current United States Patent Office statistics, on information and belief, the first office action on the patent application will not be issued until approximately August 2015 at the earliest.

29.     Dealer Tire became aware of the Application later in August 2014, after it was published.  It was at this point that Dealer Tire also became aware of the Provisional

Application and the use of the DRSG screen shot and Dealer Tire's Confidential Information in both the Provisional Application and the Application, to describe an invention that could be read on the System (DRSG), the Dealer Tire API and the Interface Result.

30.     Given Dealer Tire's understanding of the parties' respective knowledge and systems prior to the parties working together, as well as the assignment to Dealer Tire of any rights Dealerlogix may have had in the System (DRSG), the Dealer Tire API and the Interface Result, Dealer Tire was surprised to see that Mr. Brandon was claiming patent rights in an invention that, in essence, included these three elements.

31.     Accordingly, business people at Dealer Tire contacted Mr. Brandon to discuss his understanding of the Application in light of the NDA and APA.  Mr. Brandon analogized the System (DRSG), the Dealer Tire API and the Interface Result to a "Frisbee" that worked with a throwing system – he told Dealer Tire's representative that he was not trying to claim the Frisbee as his system could work with any Frisbee – it was just an example – and he was really just trying to claim his system.  Based on Dealer Tire's knowledge of Dealerlogix's and Mr. Brandon's technology from the parties' work together, the terms of the APA (including, but not limited to, the representations and warranties and the assignment provisions), and the parties' conversation in the fall of 2014, Dealer Tire believed that Dealerlogix's "system" was limited to the Dealerlogix walk around inspection tool.

32.     Accordingly, counsel for Dealer Tire then began to communicate with counsel for Mr. Brandon to try to resolve the matter, including suggesting areas of the application that needed revision so as to not disclose or claim Dealer Tire's Confidential

Information and intellectual property.  After several rounds of letter writing, counsel for Mr. Brandon finally stated that, contrary to earlier representations, Mr. Brandon actually *had* intended to claim a system that would include Dealer Tire's intellectual property, *i.e.*, the System (DRSG), the Dealer Tire API and the Interface Result.  Through his counsel's correspondence, Mr. Brandon also claimed, for the first time, that he invented these elements in 2005, prior to Dealer Tire.  Mr. Brandon also offered a license to Dealer Tire for its supposed use of his alleged invention, or that the parties come to some other business arrangement to cover the use of his alleged invention by Dealer Tire.

33.     Accordingly, this suit is necessary, because the invention claimed by Mr. Brandon belongs to Dealer Tire; both because Dealer Tire is the sole and original owner of that invention and, even to the extent that Mr. Brandon (or others at Dealerlogix) may have made an inventive contribution to it, any rights Mr. Brandon or Dealerlogix had to that invention were transferred to Dealer Tire as a result of the Dealer Tire/Dealerlogix APA.

34.     In this regard, on information and belief, either Dealerlogix already owned the rights in Mr. Brandon's invention and thus was able to transfer them to Dealer Tire via the APA, or Dealerlogix had a duty under the APA to secure such rights for Dealer Tire from Mr. Brandon, in order to transfer them to Dealer Tire.

35.     Given that Mr. Brandon was personally a signatory to the agreement, he was certainly aware of its requirements, and had a duty to speak, in good faith, should he have any disagreement with the requirements and believed that he and not Dealer Tire had the rights to the invention at issue.  He did not speak, and Dealer Tire proceeded with the APA, relying on its terms, including the representations and warranties therein.

**COUNT I**
**BREACH OF CONTRACT (NDA)**
**Against Dealerlogix**
Under Ohio Law

36.    Dealer Tire re-alleges paragraphs 1 through 35 as if fully set forth herein.

37.    Dealer Tire and Dealerlogix are parties to the NDA.

38.    Dealer Tire has fully performed under the NDA and met all of its obligations under that agreement.

39.    Dealerlogix has breached the NDA by, *inter alia*, allowing its officer, Mr. Brandon, to utilize Dealer Tire's Confidential Information for, among other things, the purpose of filing the Provisional Application and the Application. The use includes, but is not limited to, the DRSG screen shot included in both the Provisional Application and the Application, and other Dealer Tire Confidential Information that enabled Mr. Brandon to describe an invention that could be read on the System (DRSG), the Dealer Tire API and the Interface Result.

40.    Under the NDA, neither Dealerlogix nor its Representatives, as defined in the NDA to include officers and employees such as Mr. Brandon, had any right to use Dealer Tire's Confidential Information for any purpose other than "evaluating and potentially engaging in a business relationship (the 'Permitted Use')" between the parties. (*Id.*, Recitals A.)

41.    Mr. Brandon's use of Dealer Tire's Confidential Information was not a Permitted Use under the NDA.  Under the NDA, Dealerlogix is responsible for this use and such use thus constitutes a breach of the NDA.

42.    The NDA provides that ███████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████ " (Exh. A

at Sec. 2(a).)

43.     Dealer Tire has suffered material damage as a result of this misuse of its

Confidential Information including, but not limited to, the disclosure of its DRSG screen

shot in a manner not authorized by Dealer Tire and also that its inventions (the System

(DRSG), the Dealer Tire API and the Interface Results) are now part of an Application

that purports to be solely invented and owned by Mr. Brandon.  Dealer Tire's damage is

multiplied by the fact that Mr. Brandon now is seeking to license Dealer Tire's own

invention back to it or otherwise make Dealer Tire pay for the use of its own invention.

**COUNT II**
**BREACH OF CONTRACT (APA)**
**Against Dealerlogix**
**Under Ohio Law**

44.     Dealer Tire re-alleges paragraphs 1 through 43 as if fully set forth herein.

45.     Dealer Tire and Dealerlogix are parties to the APA.

46.     Dealer Tire has fully performed under the APA and met all of its

obligations under that agreement.

47.     Dealerlogix has breached the APA by, *inter alia*, allowing its officer, Mr.

Brandon, to utilize Dealer Tire's Confidential Information for, among other things, the

purpose of filing the Provisional Application and the Application, and by continuing to

pursue that Application not for the benefit of Dealer Tire.  On information and belief, Mr.

Brandon is acting either for the benefit of Dealerlogix or, in the alternative, for his own

personal benefit.

48.     Under the APA, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████. (Exh. B. at I.E.2 & I.E.3).

49.     Further, under Section IV.G, Dealerlogix undertook responsibility for the actions or omissions of its employees, including Mr. Brandon, as if Mr. Brandon stood in the shoes of Dealerlogix in the APA.  Further, under Section I.D, Dealerlogix represented and warranted that it had "████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████"

50.     Thus, if Dealerlogix did not already own Mr. Brandon's alleged invention, including, but not limited to, the Provisional Application (and thus the Application), at the time it entered into the APA, it had a duty to secure ownership and transfer it to Dealerlogix.  If it was unable to do so, it is responsible to Dealer Tire for any damages and injury that flows from this breach of the APA.

51.     On information and belief, either Dealerlogix or Mr. Brandon owns the Application and refuses either to amended it to remove Dealer Tire's intellectual property or to transfer ownership of the Application to Dealer Tire.  Instead, Mr. Brandon has offered Dealer Tire a license or other business arrangement which would, in essence, have Dealer Tire contract a second time to acquire both its own intellectual property, as well as an intellectual property of Mr. Brandon and Dealerlogix that Dealer Tire already

acquired through the APA.  Dealer Tire has thus suffered material damage as a result of Defendants' actions.

**COUNT III**
**MISREPRESENTATION**
**Against Dealerlogix and Mark Brandon**
**Under Ohio Law**

52.     Dealer Tire re-alleges paragraphs 1 through 51 as if fully set forth herein.

53.     Under the NDA, Dealerlogix, and Mr. Brandon as an officer of Dealerlogix, had a duty to not use Dealer Tire's Confidential Information for any unauthorized purpose.  Indeed, the only Permitted Use was "███████████████████ ███████████████████████████████." (Exh. A., Recitals A.)

54.     Under the APA, in particular due to the representations and warranties in that Agreement, Dealerlogix, and Mr. Brandon as an officer of Dealerlogix, had a duty to disclose the fact of Mr. Brandon's Provisional Application, and later his Application, as well as Mr. Brandon's contention that he owned the invention covering the System (DRSG), the Dealer Tire API and the Interface Result.  The failure to disclose these facts are material and likely would have, at a minimum, altered the terms of the APA, including requiring the express assignment by Mr. Brandon of his supposed patent rights.

55.     Instead, by remaining silent, Dealerlogix and Mr. Brandon knew or should have known that Dealer Tire would rely on the representation that Dealerlogix had or had acquired all necessary rights and would transfer of any interests Dealerlogix had in those inventions to Dealer Tire under the APA.

56.     On information and belief, Dealerlogix and/or Mr. Brandon, on behalf of Dealerlogix or, alternatively, for his own benefit, knew that numerous statements and representations made by Dealerlogix (and Mr. Brandon as signatory for Dealerlogix) in

the APA were false in light of the filing of the Provisional Application, including the representations and warranties section and the statements regarding ownership and assignment of the intellectual property.

57.     Dealer Tire justifiably relied upon, among other provisions, the APA representations and warranties, and the assignment provision, in entering into the APA.

58.     As a result, Dealer Tire is now damaged, especially by the fact that Mr. Brandon now is seeking to license Dealer Tire's own invention back to it or otherwise make Dealer Tire pay for the use of its own invention.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS**
**Against Dealerlogix and Mark Brandon**
**Under Ohio Law**

59.     Dealer Tire re-alleges paragraphs 1 through 58 as if fully set forth herein.

60.     Dealer Tire and Dealerlogix are parties to the NDA, under which Dealerlogix and its officer, Mr. Brandon, undertook a duty to maintain confidential and not use for any unauthorized purpose all of Dealer Tire's Confidential Information, as defined by the NDA, that was disclosed to them by Dealer Tire.

61.     Mr. Brandon (in either his individual capacity or, in the alternative, in his capacity as an officer of Dealerlogix) was only able to access and acquire Dealer Tire's Confidential Information as a result of the NDA and has utilized Dealer Tire's confidential, proprietary and trade secret information for, among other things, the purpose of filing the Provisional Application and the Application. The use includes, but is not limited to, the DRSG screen shot included in both the Provisional Application and the Application and other Dealer Tire Confidential Information that enabled Mr. Brandon to

describe an invention that could be read on the System (DRSG), the Dealer Tire API and the Interface Result.

62.     Under the NDA, neither Dealerlogix nor its Representatives, as defined in the NDA to include officers and employees such as Mr. Brandon, had any right to use Dealer Tire's Confidential Information for any purpose other than "███████████ ██████████████████████████████████████████████████" between the parties. (*Id.*, Recitals A.)

63.     Mr. Brandon's use of Dealer Tire's Confidential Information was not a Permitted Use under the NDA.  Due to its duties created under the NDA, Dealerlogix is also responsible for this misuse.

64.     The NDA provides that ███████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████████████" (Exh. A at Sec. 2(a).)

65.     Dealer Tire has suffered material damage as a result of this misuse of its Confidential Information including, but not limited to, the disclosure of its DRSG screen shot in a manner not authorized by Dealer Tire and also that its inventions (the System (DRSG), the Dealer Tire API and the Interface Results) are now part of an Application that purports to be solely invented and owned by Mr. Brandon.  Dealer Tire's damage is multiplied by the fact that Mr. Brandon now is seeking to license Dealer Tire's own invention back to it or otherwise make Dealer Tire pay for the use of its own invention.

66.     In addition, there is a substantial likelihood that, unless enjoined, further disclosures of Dealer Tire's Confidential Information will be made by Mr. Brandon (and/or Dealerlogix) during the prosecution of the Application, which will cause additional injury to Dealer Tire.  Depending on the nature and extent of those disclosures, it is likely that damages will be insufficient to compensate Dealer Tire for such misuse.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**Against Mark Brandon**
**Under Ohio Law**

67.     Dealer Tire re-alleges paragraphs 1 through 66 as if fully set forth herein.

68.     As the signatory on behalf of Dealerlogix to both the NDA and APA, Mr. Brandon was intimately familiar with both agreements and with Dealerlogix's duties under the agreements.

69.     By filing and pursuing the Provisional Application and the Application, as well as refusing to amend the Application to remove Dealer Tire's Confidential Information and intellectual property and by offering to license or otherwise transfer for an additional price Dealer Tire's intellectual property (and any associated intellectual property Mr. Brandon possessed that should have been transferred under the APA) back to Dealer Tire, Mr. Brandon has caused Dealerlogix to breach both the NDA and the APA, as set forth above in Counts I and II.  On information and belief, these actions by Mr. Brandon were intentional, and were done in his individual capacity, for his own benefit and not as an officer, employee or otherwise an agent of Dealerlogix.

70.     Mr. Brandon has no legally cognizable justification for these actions.

71.      Dealer Tire has suffered material damage as a result of this misuse of its Confidential Information including, but not limited to, the disclosure of its DRSG screen

18

shot in a manner not authorized by Dealer Tire and also that its inventions (the System (DRSG), the Dealer Tire API and the Interface Results) are now part of an Application that purports to be solely invented and owned by Dealer Tire.  Dealer Tire's damage is multiplied by the fact that Mr. Brandon now is seeking to license Dealer Tire's own invention back to it or otherwise make Dealer Tire pay for the use of its own invention.

**COUNT VI**
**UNJUST ENRICHMENT**
**Against Mark Brandon**
**Under Ohio Law**

72.     Dealer Tire re-alleges paragraphs 1 through 71 as if fully set forth herein.

73.     As a signatory on behalf of Dealerlogix to the NDA, Mr. Brandon was able to have access to Dealer Tire's Confidential Information, including information relating to the System (DRSG), the Dealer Tire API and the Interface Results.   On information and belief, Mr. Brandon utilized this information to his personal benefit, without authorization, in the Provisional Application and the Application.    On information and belief, Mr. Brandon was not acting as an officer, employee or agent of Dealerlogix in taking these actions.

74.     Mr. Brandon has full knowledge of the benefits flowing from this use.

75.     At a minimum, Dealer Tire should be compensated for the use of its Confidential Information in the Provisional Application and Application.  As a result of this use, any trade secret or confidential protection previously granted to such information has been lost.  Thus, it would be unjust for Mr. Brandon to retain the benefits of this use, without compensation to Dealer Tire.

**COUNT VII**
**CONVERSION**
**Against Mark Brandon**
**Under Ohio Law**

76.     Dealer Tire re-alleges paragraphs 1 through 75 as if fully set forth herein.

77.     The invention claimed by Mr. Brandon in the Application belongs to Dealer Tire both because Dealer Tire is the sole and original owner of that invention and, even to the extent that Mr. Brandon may have made an inventive contribution to it, any rights Mr. Brandon had to that invention were (or should have been) transferred to Dealer Tire as a result of the Dealer Tire/Dealerlogix APA.

78.     Despite requests, Mr. Brandon refuses to amend the Application to remove Dealer Tire's intellectual property and, further, has offered Dealer Tire, *inter alia*, a license to its own invention.  These actions are wrongful and deprive Dealer Tire of its intellectual property rights.   On information and belief, in taking these actions Mr. Brandon was and is acting in his individual capacity for his own personal benefit.

79.      Dealer Tire is thus injured by or Mr. Brandon's wrongful conversion of its intellectual property rights.

**DEMAND FOR RELIEF**

WHEREFORE, Dealer Tire respectfully requests the following relief:

(a)     A judgment against Dealerlogix and Mark Brandon as to all Counts that pertain to each;

(b)     That the Court permanently enjoin Dealerlogix and Mark Brandon and, if applicable, their members, managers, officers, agents, servants, employees, licensees, successors, assigns, attorneys, subsidiaries, related companies and all persons acting for,

with, by, through or under them, and each of them, from any further unauthorized uses of the Dealer Tire Confidential Information;

(c)     That Dealerlogix and/or Mark Brandon assign and transfer to Dealer Tire any ownership interest one or more of them may have in the Application and any continuations, continuations-in-part, divisionals or any other patent applications that describe, contain or claim Dealer Tire's Confidential Information or intellectual property including, without limitation, the System (DRSG), the Dealer Tire API and the Interface Results;

(d)     That as to all Counts, such damages as Dealer Tire has sustained in consequence of such violations, together with pre- and post-judgment interest;

(e)     That as to all counts where permitted, Defendants pay to Dealer Tire an award of punitive and/or treble damages;

(f)     Attorneys' fees, costs and interest incurred in this action; and

(g)     Any additional relief, either in law or equity, as the Court determines is just and equitable.

DATED:  May 15, 2015

/s/ Nicole D. Galli
Nicole D. Galli
BENESCH FRIEDLANDER
COPLAN & ARONOFF LLP
One Liberty Place, Suite 3611
1650 Market Street
Philadelphia, PA  19103
Tel. (267) 207-2948
Fax (267) 207-2949
ngalli@beneschlaw.com

Risto Pribisich
BENESCH FRIEDLANDER
COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Tel. (216) 363-4500
Fax (216) 363-4588
rpribisich@beneschlaw.com

*Attorneys for Plaintiff*
*Dealer Tire, LLC*